DECISION AND JUDGMENT ENTRY
This is an appeal from a May 15, 2001 judgment of the Huron County Court of Common Pleas, Juvenile Division, in which the court dismissed motions to show cause for contempt filed by both Norman J.H. and Victoria L.W. Because we find no prejudice to Norman J.H. caused by the trial court's actions, we affirm the trial court.
The record shows that Norman ("the father") and Victoria ("the mother") are the parents of a son, but were never married. The father filed a complaint for custody in the Huron County Court of Common Pleas, Juvenile Division, in 1998. He asked that custody, visitation and child support issues be decided.
Following that initial complaint, the record shows that the parties have had several disputes about visitation and custody over the years. Statements made on the record by the attorneys for the parties show the following reasons for some of the disputes.
The father lives in a different part of the state than the mother and child. The father also suffers from a disability, which he says makes it difficult for him to drive very far. He wants to have a mid-way meeting point for the exchange of the child from one parent to the other. The father says the mother should just make arrangements for some other adult to drive the child to the exchange point if she has trouble getting there herself.
The mother works in Sandusky and lives near Norwalk. She says the father voluntarily chose to move to another part of the state, and she should not have the burden of driving half-way, since she is low on seniority at her place of work and she cannot make it to the half-way point on time without leaving work early each time a transfer of the child has to be made for visitation. In addition, she says the father does not work at all because he is on full disability, so he has no conflict with a work schedule when he has to drive further.
The juvenile court issued an order regarding visitation that included the following provision:
 "It is further ordered that regarding the transportation, father shall be responsible for the pick-up and drop-off of Carrick, except when a pick-up or drop-off is on Easter, the Saturday night before Easter, Christmas, Christmas Eve, Thanksgiving and July 4th; on these listed holidays, pick-up or drop-off is to take place at the Mansfield Police Department at the scheduled time. Therefore, in the year 2000, when drop-off back to mother's is to take place on Christmas Day at 10:00 AM, it is to take place at the Mansfield Police Department at 10:00 AM. The same would apply for the drop-off the Saturday night before Easter on April 14, it shall take place at the Mansfield Police Department at 9:00 PM."
As will be explained, this provision proved troublesome during the Thanksgiving 2000 visitation.
The mother filed two motions at the beginning of December 2000. The first motion was a request for the modification of the child support orders, since social security payments made to the child due to the father's disability were reduced. The second motion was to require the father to show cause why he should not be held in contempt because at the end of the Thanksgiving visitation, the father "attempted to drop off the parties' minor child at the Mansfield Police Department rather than at the Norwalk Police Department as ordered in this matter."
The father responded by filing his own motion to require the mother to show cause why she should not be held in contempt for 1) interfering with the father's phone visitation with the child; and 2) not being present in Mansfield at the police department for the transfer of the minor child from the father to the mother at the close of the Thanksgiving visitation.
The trial court scheduled a pre-trial and hearing on the cross-motions. The transcript from the proceedings shows that the trial court first held a pre-trial. During the pre-trial, the trial court asked the attorneys for the parents if the difficulties between the parents could be worked out without formally proceeding. The attorneys proceeded to engage in conversation with the trial court explaining the basis of the disputes between their clients.
Eventually, the mother's attorney said:
 "She said, Mom's position is, I don't like to have to drive to Mansfield on these designated days, but I have and I will, and I'll follow the Court's order. That's her position, she doesn't like it, but she'll do it. She didn't do it one time. We had a mix-up one time because it was an interpretation [sic] the way that order was written. Now, if he wants to still pursue her on the contempt, so be it. You know, she doesn't want to pursue him any longer on the contempt. If he wants to pursue her, fine. He'll never be able to prove that she willfully was in contempt, though, because it was an interpretation of this court order. So, that's why I'm suggesting both the contempts go away.
The father's attorney responded:
 "Well, I won't probably have a problem with that prong, but we have the problem of the interference with the telephone contact. I've got several where he's had, you know * * *'
The conversation then continued between the father's attorney and the trial judge about the nature of the interference with the father's telephone visitation with the child. The trial judge eventually asked the mother's attorney if the mother could call back the father at her expense if the child was not available to talk on the phone when the father called on Wednesday nights at 7:00 and the mother's attorney said he believed something could be "worked out".
The trial judge then said:
 "Okay. All right. That, let's leave that resolution or that issue for now. Again, [the father's attorney] has stated that on several times what Father wants the exchange to be, how the exchange is to take place. What is Mother wanting here? Well, what misinterpretation did Mother make on Easter, or before Easter?"
The mother's attorney responded:
 "Okay. If you go back and look at the court order, it says that regarding transportation, Father shall be responsible for pick-up and drop-off, except when pick-up or drop-off is on Easter, the Saturday night before Easter, Christmas, Christmas Eve, Thanksgiving, and the Fourth of July. On these holidays, pick-up and drop-off is to take place in Mansfield, okay. Now, Mom was reading that if the problem happened on Thanksgiving, and the pick-up and drop-off wasn't on Thanksgiving Day. So, we were reading this to say that if the pick-up and drop-off is some time other than on Thanksgiving Day, then it happens here in Norwalk. If it were to happen on Thanksgiving Day, then it would happen down at Mansfield."
The court then asked:
 "Okay. And, the, what happened on Easter? Give me the particulars of what happened on Easter."
The attorneys for both the mother and father agreed that on Easter, the pick-up and drop-off of the child took place in Mansfield. More conversation ensued and then the trial judge said: "Okay. Your clients are here. Take a few minutes to talk to each of them; otherwise I'll do something that neither of them will like."
The mother's attorney interjected that one other issue remained. When the judge asked what that issue was, the mother's attorney answered: "Well, we've got the two contempt motions; I'm thinking they can go away." The trial judge said: "Yes, okay." The mother's attorney said that the one issue that remained was the modification of child support. He informed the court that social security, which had been making payments directly to the mother from the father's disability benefits, had informed the mother that an overpayment was made. Since the father now has a second child, the amount of benefits paid to the first child must be reduced. The mother's attorney said that social security was requiring the mother to repay the overpaid amount.
More discussion on that topic ensued. The father's attorney eventually said that he was not aware there was a pending motion about child support and that he was only there on the contempt motions. The court then called a recess so that the father's attorney could be given a copy of the motion to modify child support and so that the attorneys could talk with their clients.
When the proceedings resumed, the court said:
 "Be seated, please. This is [H.] versus [W.], 98-2285. There are both contempt matters and support matters before the Court. The support issues raised by motion before the Court were scheduled for further pretrial. I want to ask Counsel whether those issues cannot be resolved by both parties submitting financial statements to the Court, along with supporting documents or arguments, and have the Court resolve those issues from those writings?"
The attorneys for both the father and mother agreed to that plan. The court then continued:
 "Okay. On the issues raised by contempt, there are questions of compliance with visitation, the visitation plan; have any of those issues been resolved by agreement?
 The father's attorney answered: "I don't believe so, Your Honor."
The following exchange then took place:
 "Court: Is there any reason why I shouldn't resolve these issues by each side giving the Court a statement of their facts and their positions in these cases and making a resolution from that? I can spend, and don't wish to spend, the rest of the afternoon with he said, she said, kinds of exchanges when these are issues that should be resolved among the parties and apparently haven't been able to be resolved between the parties. Any reason why the Court shouldn't resolve it in that manner? Not resolving the issues of contempt, but resolving the underlying issues. Mr Stoll?
 "Stoll: Your Honor, my client would rather proceed with evidence and testimony.
"Court: He wants to know who won and who lost?
"Stoll: Yes, Your Honor.
 "Court: Well, he'll be one of the losers for sure. You wish to proceed with your motion simultaneously?
 "McKown: Actually, Your Honor, we're willing to withdraw our motion, because I think that the issues we raised in our motion, the Court has since addressed.
 "Court: Okay. What witnesses and what evidence do you wish to present in a summary fashion, Mr., what will your evidence show?
 "Stoll: Your Honor, our evidence will show that Norm [H.] was at the Mansfield Police Station as was called for in the court order, spoke to a, it was confirmed by a Lieutenant Fortney, we have a certified copy of his report, and then we would also be introducing phone records that show that my client has been denied telephone contact, as has been previously ordered with his son.
"Court: So, the contempt was that he was in Mansfield?
"Stoll: Yes.
"Court: And, where's the contempt on the part of Mother?
 "Stoll: That she was not in Mansfield and he had to drive to Norwalk.
"Court: And, where will the evidence of
intentionally disobeying a court order be?
 "Stoll: Your Honor, I don't believe that contempt requires an intent, to intentionally, I don't believe there's a scienter element.
"Court: Well * * *
 "Stoll: The scienter may affect the punishment that the Court * * *
 "Court: If the Court finds no scienter in this case, you can be sure what your client will achieve by way of sanctions will be as close to nil as the Court can reach. So, you will have no evidence of scienter?
 "Stoll: Your Honor, other than the fact that she was not where she was supposed to be.
 "Court: Then the Court will, on its own, with that proffer, dismiss that portion of your contempt citation. In regard to, what will your evidence be in regard to the other allegations of contempt?
 "Stoll: With respect to the other allegation of contempt with the phone calls, I have my client's testimony that he would call; we also have telephone, his long distance telephone records that show several one-minute calls.
 "Court: That he called on the Wednesday nights when he was supposed to have visitation, and what will the evidence be in regard to any explanation of those failures given?
 "Stoll: There was one explanation of T-ball that we discussed at pretrial before the hearing, but he has not received any other, other than a few statements of, he's not, the child's not here, or that there was just no answer at the home.
 "Court: What evidence in defense of that allegation would be offered, Mr. McKown?
 "McKown: Your Honor, that on one or perhaps two occasions, the child wasn't there because of T-ball at 7:00 in that messages weren't left or, or return calls were made, return calls were made by Mom or by the child to Dad's number."
More discussion ensued and then the Court said:
 "I can indicate to you that if the Court were to find that to be in contempt, it would be the Court's intention simply to modify the telephone contact order to require that any time the child is not contacted, is not available for Father at the designated time, that Mother would have the obligation, at her expense, to return the child's call to Father within a 24 hour period of time."
The mother's attorney made a suggestion for a more specific plan, and the court replied:
 "I really hesitate. The more I detail these things, the more I give these two parties, who obviously hate each other, the opportunity to fight further, to the detriment of the child. As a practical matter, Father needs to leave a message if the child isn't there when he attempts to contact and Mother has an obligation within a 24 hour period of time to reestablish the contact. If that's the only evidence of contempt you have, the Court is simply going to on its own, with that information, modify that calling arrangement order in that fashion. And, with that in mind, the court is dismissing both of these contempt allegations and the Court is going to require the parties to submit those documents for modification of the financial obligations between the parties. I don't believe there are any other pending issues. Are there?"
The attorneys for both parents initially answered "No."
The father's attorney then asked that the father be given a reason for why the child was not there to take his call each time the child had to call the father back. The court directed that either the mother or the child could make an explanation to the father when the return call was made at the mother's expense.
The mother's attorney then asked that when the pick-up and drop-off of the child took place in Mansfield, that the time for the pick-up or drop-off be no earlier than 6:00 p.m. so that the mother would not have any more problems with trying to get off work early to get to Mansfield on time for the transfer of the child. The court directed the mother's attorney to put that proposal in writing so that the father's attorney could respond to the idea, also in writing, at the same time the parties provided the court with financial documents so that the court could make a ruling on the motion to modify child support. The mother's attorney agreed to the plan and the court continued the matter to decide the child support modification at a non-oral hearing.
The trial court then filed a judgment entry in which it stated that the motions for contempt were dismissed and directed the parties to submit financial documents within ten days. The court also said:
 "It is further ordered that the defendant, Victoria [B.], shall attempt to make the child available for telephone contact with the plaintiff/father every Wednesday at 7:00 PM. Father shall leave a message for the child if the child is not available and the child shall return father's telephone call within twenty-four (24) hours at mother's expense.
 "It is further ordered that Mr. McKown shall submit a proposal for modification of visitation to include the issue of transportation within one (1) week and Mr. Stoll shall respond to the visitation proposal within one (1) week thereafter."
The record shows that the parties did file written arguments and documents relating to the question of whether the child support order should be modified. The mother's attorney also filed a motion for a non-oral hearing on the questions remaining relating to visitation and transportation. Before the trial court entered a ruling on the issues, the father filed a notice of appeal to this court. Subsequent to the notice of appeal, the trial court filed a judgment in which it directed that the drop-off and pick-up of the child take place in Mansfield, Ohio at 6:00 p.m.
On appeal, the father has presented two assignments of error that are:
 "I. THE COURT ERRED IN SUA SPONTE DISMISSING NORMAN [H.'S] CONTEMPT MOTION WITHOUT HEARING ANY EVIDENCE OF CONTEMPT.
 "II. THE COURT ERRED IN DISMISSING, SUA SPONTE, THE CONTEMPTS AS A MATTER OF LAW AS NO SCIENTER ELEMENT IS REQUIRED IN A CIVIL CONTEMPT PROCEEDING."
In support of his first assignment of error, he argues that the trial court should not have sua sponte dismissed his contempt motion without hearing any evidence. He argues that he was prejudiced when the trial court made him proceed with a proffer, and then dismissed the motions for contempt.
In support of his second assignment of error, he argues that the trial court applied an incorrect standard to the motions for contempt because the trial court required proof of scienter. Specifically, he says he should not have been required to show that the mother intentionally violated the order to pick-up the child in Mansfield following Thanksgiving even though she understood that is what the order actually required.
We agree with the father that technically the trial court did not follow proper procedure when it: 1) did not ensure the due process rights of both parties by conducting a formal hearing to permit the introduction of evidence after the father did not agree to waive the formal hearing, see Ginsburg v. Haddad (Sept 29, 1995), Erie App. No. E-95-001, unreported, and 2) sua sponte dismissed the father's motion for contempt. We further agree that the father is correct that the trial court apparently had a misunderstanding of the proper standard for the contempt motions as evidenced by its statements that a showing of scienter was required. See Pugh v. Pugh (1984), 15 Ohio St.3d 136 at paragraph one of the syllabus. However, under the circumstances in this case we can find no prejudice to the father's case from the trial court's errors.
The record shows that the mother's attorney conceded that she was not present in Mansfield on the day after Thanksgiving when the transfer of the child was scheduled to take place. The mother's attorney also conceded that the child had not always been available at 7:00 p.m. on Wednesdays for telephone visitation with the father. Therefore, no dispute remained regarding the key issues raised in the father's motion for contempt. Furthermore, the trial court addressed both issues raised by the father in his motion for contempt and entered rulings that clarified the father's visitation rights and required the mother to ensure that the father's visitation with the child took place. Therefore, even though no finding of contempt was made against the mother in this case, the trial court did address the underlying problems that the father had encountered with his visitation with the child. Accordingly, we find both assignments of error not well-taken.
The judgment of the Huron County Court of Common Pleas, Juvenile Division, is affirmed to the extent that it has clarified and enforced the father's right to visitation with his child. Norman [J. H.] is ordered to pay the court costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J. and Mark L. Pietrykowski, P.J., CONCUR.
Richard W. Knepper, J., CONCURS IN JUDGMENT ONLY.